**CARLSON LYNCH, LLP**
Edwin J. Kipela (Pro Hac Vice Pending)
ekilpela@carlsonlynch.com
(Eddie) Jae K. Kim (CA Bar #236805)
ekim@carlsonlynch.com
Eric D. Zard (Ca Bar # 323320)
ezard@carlsonlynch.com
1350 Columbia Street, Suite 603
San Diego, CA 92101
Telephone: 619-762-1903
Facsimile: 619-756-6991
*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MONDIGO and RICHARD FAMIGLIETTI, *individually and on behalf of all others similarly situated*,<br><br>          Plaintiffs,<br><br>v.<br><br>EPSON AMERICA, INC.<br><br>Defendant. | Case No.   **'19 CV 2009 BEN BGS**<br>CLASS ACTION COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs William Mondigo and Richard Famiglietti, individually and on behalf of all others similarly situated, bring this Complaint against Epson America, Inc., ("Epson" or "Defendant") and allege as follows:

### I.     NATURE OF THE CASE

1.     This is a class action brought to seek redress on behalf of all persons and entities who purchased an Epson Printer and suffered harm as result of Epson's anti-competitive, unfair, fraudulent and oppressive and illegal conduct.

2.      Specifically, Epson engaged, and continues to engage, in a systematic campaign of disabling Epson printers when the owner attempts to use non-Epson ink cartridges in an effort to improperly and illegally quash competition from third-party manufacturers.  To carry out this scheme, Epson designed and delivered software and/or firmware Updates to Epson printers that purposely disabled those printers with non-Epson printer cartridges installed.  For many users, these software updates effectively ruined their printers.  For others, the updates forced them to purchase Epson ink cartridges, which are significantly more expensive than third-party cartridges.

3.      There is nothing inherently wrong with the third-party ink cartridges that causes them to fail or that precludes their use in Epson printers.  Indeed, these cartridges function without issue on Epson printers that do not have the Updates installed.

4.      Epson never informed Epson printer owners that the Updates would prevent their printers from working if they had third-party ink cartridges installed.  To the contrary, the Epson Software License informs consumers that the software and/or firmware Updates will improve the printers and fix known issues.

5.      Epson's actions violate the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S. C. § 1030, the Connecticut Unfair Trade Practices Act ("CUTA"), the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*., the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*. and California Computer Penal Code § 502 (Unauthorized access to computers, computer systems and computer data).

## II.      PARTIES

### Plaintiffs

6.      Plaintiffs William Mondigo purchased and owns an Epson WorkForce WF-3640 All-in-One Printer.  He is a resident of San Diego, California.  Plaintiffs Mondigo carefully reviewed the printer specifications before he chose to purchase

the Epson WorkForce WF-3640 All-in-One Printer.  The specifications did not disclose that Epson would disable the printer if he used third-party ink cartridges.

7.      Plaintiffs Richard Famiglietti purchased and owns an Epson XP-830 Small-in-One® printer.  He is a resident of Waterbury, Connecticut.  Plaintiffs carefully reviewed the printer specifications before he chose to purchase the Epson XP-830 Small-in-One® printer.  The specifications did not disclose that Epson would disable the printer if he used third-party ink cartridges.

**Defendant**

8.      Defendant Epson America, Inc. is headquartered in Long Beach, California.  Epson is the American subsidiary of Seiko Epson Corporation, a Japanese corporation.  Epson America, Inc. is incorporated in the State of California. Epson America, Inc. is responsible for selling and marketing Epson printers in the United States.

9.      information and belief, Epson's conduct emanated from its headquarters in Long Beach, California and the Epson employees/personnel responsible for this conduct are located at Epson's California headquarters.

**III.      JURISDICTION AND VENUE**

10.      This Court has federal question subject-matter jurisdiction pursuant to 18 U.S.C. § 1331 because Plaintiffs alleges that Epson violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*.

11.      This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) in that the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are at least 100 members of the proposed class, and at least one member of the class is a citizen of a different state than Defendant.  Further, greater than two-thirds of the members of the Classes resides in states other than the state in which Defendant is a citizen.

12.      This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because all the claims alleged form part of the same

1    case or controversy.

2       13.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and

3    1391(d) because a substantial part of the events and omissions giving rise to the

4    claims emanated from activities within this District.

5    **IV.    FACTUAL ALLEGATIONS**

6       14.    Epson markets and sells printers and Epson ink cartridges in the United

7    States.   Consumers can purchase printers directly from Epson or directly from

8    retailers such as Staples, Best Buy, Walmart, Amazon and others.

9       15.    The printers, usually, come with ink cartridges but those ink cartridges

10   will eventually need to be replaced as the printer is used.  The sale of replacement

11   ink cartridges is an important source of revenue and profit for Epson as Epson ink

12   cartridges range in price from approximately $10 to $150 or more for high-end

13   printers. In many cases, the cost of replacement cartridges over the life of a printer

14   is significantly larger than the cost of the printer itself.

15      16.    Original Equipment Manufacturer ("OEM") ink cartridges for the

16   Epson XP-830, ink code 410, cost approximately $12.99 for a single black, cyan,

17   magenta or yellow ink cartridge.  A set of four standard ink cartridges typically costs

18   approximately $48.29.[1]     A 410XL capacity ink cartridge for the XP-830 costs

19   between $18.99 and $24.99.  As shown in the graphic below, a set of four XL

20   cartridges costs between $75.96 (four (4) cartridges at $18.99 each) to $82.96 (three

21   (3) cartridges at $18.99 and one (10 cartridge at $24.99):

22

23

24

25

26

27

28   [1]   Epson, Epson Expression Premium XP-830 Small-in-One All-in-One Printer Ink,
     https://epson.com/InkFinder/i/C11CE78201 (last accessed Oct. 14, 2019).

4

| Color | Ink Code | Our Price | Qty | Change Qty |
|---|---|---|---|---|
| Epson 410, Black Ink Cartridge | 410 | $12.99 | 0 | + – |
| Epson 410, Photo Black Ink Cartridge | 410 | $12.99 | 0 | + – |
| Epson 410, Cyan Ink Cartridge | 410 | $12.99 | 0 | + – |
| Epson 410, Magenta Ink Cartridge | 410 | $12.99 | 0 | + – |
| Epson 410, Yellow Ink Cartridge | 410 | $12.99 | 0 | + – |
| Epson 410, Photo Black and Color Ink Cartridges, C/M/Y and Photo Black 4-Pack | 410 | $48.29 | 0 | + – |

| Color | Ink Code | Our Price | Qty | Change Qty |
|---|---|---|---|---|
| Epson 410XL, Black Ink Cartridge, High Capacity | 410XL | $24.99 | 0 | + – |
| Epson 410XL, Photo Black Ink Cartridge, High Capacity | 410XL | $18.99 | 0 | + – |
| Epson 410XL, Cyan Ink Cartridge, High Capacity | 410XL | $18.99 | 0 | + – |
| Epson 410XL, Magenta Ink Cartridge, High Capacity | 410XL | $18.99 | 0 | + – |
| Epson 410XL, Yellow Ink Cartridge, High Capacity | 410XL | $18.99 | 0 | + – |

17.   Third-party ink cartridges for the Epson XP-830 cost substantially less. For instance, on Amazon, it is possible to purchase a 5-pack of 410XL Lemero remanufactured ink cartridges for only $34.99.[2]



Lemero Remanufactured Ink Cartridge Replacement for Epson 410XL ( Black,Cyan,Magenta,Yellow , 5-Pack )
by Lemero
$34.99 prime
FREE Delivery by Sat, Nov 3
★★★★☆ ▾ 48
Save $2.00 with coupon

_____

[2]   Amazon,   https://www.amazon.com/s?k=Epson+xp+830+ink+cartridge+replacements&url=searchalias%3Delectronics&ref=nb_sb_noss (last accessed Oct. 14, 2019).

CLASS ACTION COMPLAINT
Case No.

18.     Similarly, Original Equipment Manufacturer ("OEM") ink cartridges for the Epson WF-3640, ink code 252, cost approximately $19.99 for a single black, or $12.99 for a singhe cyan, magenta or yellow ink cartridge.  A set of four standard

| Color | | Ink Code | Our Price | Change Qty |
|---|---|---|---|---|
| | Epson 252, Black and Color Ink Cartridges, C/M/Y/K 4-Pack | 252 | $56.15 | – 0 + |
| | Epson 252 Black Ink Cartridges, 2 Pack | 252 | $37.99 | – 0 + |
| | Epson 252, Black Ink Cartridge | 252 | $19.99 | – 0 + |
| | Epson 252, Cyan Ink Cartridge | 252 | $12.99 | – 0 + |
| | Epson 252, Magenta Ink Cartridge | 252 | $12.99 | – 0 + |
| | Epson 252, Yellow Ink Cartridge | 252 | $12.99 | – 0 + |
| | Epson 252, Color Ink Cartridges, C/M/Y 3-Pack | 252 | $36.19 | – 0 + |

ink cartridges typically costs approximately $56.15.[3]

19.     Third-party ink cartridges for the Epson WF-3640 cost substantially less.  For instance, on Amazon, it is possible to purchase a 5-pack of remanufactured ink cartridges for less than $30.[4]

---

[3]     Epson,   Epson   WorkForce   WF-3640   All-in-One   Printer   Ink, https://epson.com/InkFinder/i/C11CD16201 (last accessed Oct. 14, 2019).
[4] Amazon, https://www.amazon.com/s?k=replacement+ink+WF-3640&ref=nb_sb_noss_2 (last accessed Oct. 14, 2019).

CLASS ACTION COMPLAINT

Case No.





20.     In its 2018 Annual Report, Seiko Epson Corporation acknowledges that, "Third parties also supply ink cartridges and other printer consumables that can be used in Epson printers."[5]

21.     The Epson 2018 Annual Report further acknowledges that third-party ink cartridges could cut into its bottom line and could result in its losing market share.

22.     In that report, however, Epson does not discuss disabling printers to increase market share.   Instead, the report suggests more benign methods for achieving that goal such as "emphasiz[ing] the quality of genuine Epson brand" ink cartridges, "enhance[ing] customer experience and develop[ing] new products like printers with "high capacity ink tanks."  *Id.*  Epson goes far beyond these measures. It actively interferes with the functioning of third-party ink cartridges installed in Epson printers, that it acknowledges "can be used" by installing firmware and software Updates that prevent them from working in order to quash competition.

---

[5] Seiko Epson Corporation, 2018 Annual Report ("Epson 2018 Annual Report"), 18, available at https://global.epson.com/IR/library/pdf/ar2018.pdf (last accessed Oct. 14, 2019).

CLASS ACTION COMPLAINT

Case No.

**The Firmware/Software Updates**

23.     A printer owner must agree to Epson's software license when purchasing and using and Epson printer.  The second paragraph of that license states that "Epson may, however, from time to time, issue updated versions of the Software and the Software may automatically connect to Epson or third-party servers via the Internet to check for available Updates to the Software, such as bug fixes, patches, upgrades, additional or enhanced functions, plug-ins and new versions (collectively, "Updates") and may either (a) automatically electronically update the version of the Software that you are using on your personal device or (b) give you the option of manually downloading applicable Updates."[6]

24.     The Software License covers "any related documentation, firmware, or Updates."[7]

25.     Certain updates require the user to agree to the EPSON EULA EN 10/30/2009 Seiko Epson Corporation Software License Agreement.  That license does not discuss software Updates or fixes, except to state that any license includes any future Updates.

26.      Under the terms of Epson's software licenses, Plaintiffs (and any other Epson Pinter user who downloaded Epson software) authorized Epson to access their printers to apply fixes and upgrades. The Software licenses do not alert owners that these software Updates might freeze their machine if they have third-party ink cartridges installed. Instead, they promise fixes and improvements.

27.     Plaintiffs and other Epson printer owners *did not* authorize Epson to disable their printer to prevent them from using cheaper third-party alternatives to Epson's OEM ink cartridges.  Instead, Epson exceeded its authority when it disabled their printers (and the Class and Subclasses' printers, as defined below.)

---

[6] Epson, Software License Agreement, available at https://epson.com/SoftwareLicenseAgreement (last accessed Oct. 14, 2019).
[7] *Id.*

CLASS ACTION COMPLAINT

Case No.

**Epson's Misrepresentations and Omissions**

28.    Epson made misrepresentations and omissions regarding Epson printers and the use of third-party ink cartridges.

29.    Specifically, after Updates are installed to detect and disable third-party ink cartridges, Epson printers display a message claiming that the printer did not "recognize" a third-party ink cartridge when installed.

30.    The error message that the printers displayed after Updates were installed, misrepresented the cause of the printer issue, suggesting that the previously functioning third-party cartridges were broken or not installed properly when, instead, the updated software simply disables replacement ink cartridges that would otherwise work.

31.    These error messages are in direct contradiction to Epson's representations to Plaintiffs and class members that its software and firmware Updates were intended to fix or improve printer functionality.

32.    Furthermore, Epson misrepresented to Plaintiffs and class members that third-party cartridges were incompatible, when those cartridges would have worked in Epson printers and were compatible until Epson intentionally altered the software that controlled Epson printers.

33.    Epson neglected to inform Plaintiffs and others like them that accepting Updates would potentially disable their machine and, at the very least, force them into purchasing Epson ink cartridges.

34.    Epson's decision not to inform Plaintiffs and others like them that the Updates would disable their printers if they attempted to use third-party ink cartridges was made and implemented from its headquarters in California.

**Epson's Unfair and Oppressive Conduct**

35.    Epson's actions were contrary to public policy as set forth in the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S. C. § 1030 and the California

CLASS ACTION COMPLAINT
Case No.

Penal Code § 502, which prohibit computer intrusions that damage or disable computer equipment including Epson printers.

36.     Epson used its ability to access and alter their programming to disrupt the functioning of the Epson Printers to suppress competition.

37.     Epson's conduct caused harm to Plaintiffs and other Epson printer owners by forcing them to buy more expensive OEM cartridges and by rendering their less expensive cartridges useless as means for Epson to maintain its market share and profits.

38.     There were reasonable alternatives to Epson's conduct, which are listed in the Epson 2018 Annual Report.  Epson could have created reasons for Epson users to choose its ink cartridges.  It could emphasize that Epson printers are of higher quality.  Epson could have won over customers by providing superior customer experiences or by providing alternatives to its customers rather than by secretly causing functioning printers with functional ink cartridges installed to stop working.

39.     Epson's conduct was intentional and designed to suppress competition, and resulted in forcing Epson customers to pay for Epson's more expensive ink.

40.     Epson was able to take unfair advantage of Plaintiffs and others like them by rendering their printers non-functional and providing misleading error messages.

41.     Epson's conduct was widespread, pervasive, and well-known by owners of Epson printers, as well as technology industry analysts and advocates. For example, on or about October 10, 2018, a letter was sent by the Electronic Frontier Foundation, a nonprofit public interest organization that defends the rights of technology users, to the Office of the Attorney General of Texas detailing Epson's conduct, as described herein, and asking the Attorney General to investigate Epson's practice of disabling printers when third-party ink cartridges are installed.  A true and correct copy of the October 10, 2018 letter is attached hereto as **Exhibit 1.**

Case No.

42.     Additionally, individual accounts of having been victimized by Epson's conduct are widely available on consumer and technology websites.  Some examples of these complaints are as follows:

> I Installed a firmware update, and now the printer can no longer "recognize" my print cartridges which had been working fine until the update. Word on the Internet is that Epson deliberately tries to punish people who buy replacement cartridges from other vendors, so they can sell their overpriced ones, and they do that by updating the firmware so that other vendor cartridges are "not recognized".
> This is despicable. I will never buy another Epson product. They have even spawned a cottage industry that for $5 sells a firmware downgrade.
> It is cheaper to buy a new printer than to buy Epson replacement cartridges. Their business practices are predatory and should be illegal.
> *By:*  PissedConsumer1167767
> *Source:*  https://epson.pissedconsumer.com/after-firmware-update-cartridges-not-recognized-201801121167767.html
>
> I am so disgusted with Epson right now. I purchased my Epson 446 printer. I purchased my ink. In no way should Epson be able to lock up my printer because I choose to use re-purposed ink cartridges. I bought this printer because I am a Girl Scout Leader/Volunteer who wears many hats. I need a printer that will hold up. I also need a printer for some small home jobs too. I was in the middle of a print job and locked up because I decided to run the firmware update and now it will not recognize my ink. I wasted money buying this printer because now I cannot do anything with it. I just purchased $50+ in ink. I will not be forced to use Epson ink. I will go buy a new printer, and I will never recommend or buy another Epson product.
> *By:*  ColdBlackbird305
> *Source:*  https://epson.pissedconsumer.com/review.html

CLASS ACTION COMPLAINT

Case No.

I do bookkeeping at home. I was working this weekend and noticed I had a download. I have always used off brand ink and have an entire box of it. As soon as I did the download my printer locked and said to replace all my inks. I feel I should be able to use any ink I choose. I feel like my printer is being held hostage. I feel like this is communism - you buy a product but it is really not yours. Needless to say I could continue to work or do payroll. I'm throwing it out the window. I will never buy another Epson product.

*By:* Peggy of Spartanburg, SC

*Source:*

https://www.consumeraffairs.com/computers/epson.html

I recently purchased a new Lenovo computer and installed my Epson Stylus SX 115 software onto it. All was fine until the black ink ran out. To make sure that the printer was entirely compatible with the new computer I decided to upgrade the driver before I replaced the black ink. I always use compatible inks, because Epson inks are so extortionately expensive, and have never had any problems with them. Accordingly, after I had installed the new driver, I replaced the black with a compatible in.

When I next went to print I received a message telling me that the black I had installed was not a genuine Epson ink and, after various other caveats, it asked me if I wished to continue anyway. I clicked the continue button and was then taken to a screen that said that the ink cartridge 'cannot be recognised', and it showed a big cross over the black cartridge symbol. Since when I have been unable to print anything.

There has recently been a considerable number of complaints in the press about the practice of printer manufacturers refusing to recognize third-party inks when the firmware is updated over the internet. Only this month Which magazine has an article about it which tells me that such practices are against my consumer rights because I am entitled to use whichever inks I choose with my printer.

CLASS ACTION COMPLAINT

Case No.

I therefore request that Epson immediately tell me how to resolve this problem so that I can get my printer working again with third-party inks. I am copying this to Which magazine, as they are asking to hear from people like me who have had such problems.

*By:* Cherry Lewis from Birmingham, ENG

*Source:* https://www.hissingkitty.com/complaints-department/epson

**Plaintiff Famiglietti's Experience**

43. Plaintiff Famiglietti purchased an Epson XP-830 in the beginning of 2018 from OfficeMax.

44. Plaintiff Famiglietti considered several different printers but chose the Epson XP-830 because it had the features he was looking for.

45. At the time of the purchase, Plaintiff Famiglietti understood and believed that he would be able to use less expensive third-party ink cartridges. The Epson material he reviewed did not cause him to believe otherwise.

46. Plaintiff Famiglietti's Epson XP-830 uses 410 & 410XL cartridges. A couple of months after he purchased his Epson printer, Plaintiff Famiglietti purchased EZink remanufactured replacement cartridges from Ebay. They cost less than $20.00 for a pack of four. Plaintiff Famiglietti purchased the non-Epson cartridges because they were less expensive than the Epson OEM ink cartridges. Epson cartridges would have cost significantly more.

47. When his printer ran out of ink, Plaintiff Famiglietti replaced the Epson OEM cartridges with the EZink ink cartridges. The EZink cartridges worked for several months. He was able to print using his Epson XP-830 without interruption.

48. In March or April, Plaintiff Famiglietti received a message from Epson when he booted up his printer alerting him that there were available Updates for his printer. Plaintiff Famiglietti understood that the Updates would improve his printer's functionality. Plaintiffs proceeded to install the Updates.

CLASS ACTION COMPLAINT

Case No.

49.    After he installed the Updates, Plaintiff Famiglietti's Epson printer stopped printing.

50.    The Updates included instructions that detected that Plaintiff Famiglietti had installed non-Epson ink cartridges in his XP-830 printer and disabled his printer.

51.    After the firmware update, Plaintiff's XP-830 printer displayed an error message:



52.    Plaintiff Famiglietti was unable to print using his Epson printer after the Updates were installed.  He did not know that Epson would or that it, in fact did, use the Updates to access his printer and disable the ink cartridges.

53.    Based on the error message his printer displayed, Plaintiff Famiglietti replaced all four ink cartridges with new EZink replacement cartridges.  The printer still did not work and continued to display the same error message: "Ink Cartridges not recognized, replace the cartridges."

54.    Plaintiff Famiglietti attempted to resolve the error message by unplugging the printer for five (5) minutes and plugging it back in. When prompted to install cartridges he reinstalled them.  His printer still did not work and the same message appeared on the printer display.

55.    Plaintiff Famiglietti later learned that Updates caused the problem and attempted to uninstall the Updates that Epson had remotely installed in his printer.

CLASS ACTION COMPLAINT
Case No.

The new software prevented him from reverting to the previous version that did not disable the EZink ink cartridges.

56.   Epson prevents Epson printer owners to roll back the firmware once it is installed.  Plaintiff Famiglietti attempted to uninstall the software.  When his printer powered up again, it contacted an Epson site and re-installed the Updates and, once again, disabled his printer.

57.   Plaintiff Famiglietti learned that Epson ink cartridges include one or more sensor chips that track ink usage, report low-ink conditions, and balk at wrongly installed or otherwise unacceptable cartridges.  By Epson's standards, "unacceptable" includes any consumables Epson itself did not manufacture.

58.   Plaintiff Famiglietti had no reason to believe that Epson would exceed his permission to access his printer to cause him harm.

59.   Plaintiff Famiglietti reasonably relied on Epson's promise to improve his printer's functioning by installing Updates.

60.   Epson engaged in anti-competitive behavior, by limiting Plaintiff Famiglietti and other Epson Printer owners' choice by forcing them to purchase Epson OEM ink cartridges and to replace less expensive third-party ink cartridges.

61.   Epson abused Plaintiff Famiglietti's permission to remotely install Updates or upgrades.  Rather than fixing bugs, providing enhanced features or otherwise improving his printer's performance, Epson damaged his printer.

62.   As a result of Epson's conduct, Plaintiff Famiglietti suffered harm. Epson's software update rendered his EZink ink cartridges useless and required him to replace them with more expensive ink cartridges.  He has had to continue purchasing more expensive ink cartridges.

**Plaintiff Mondigo's Experience**

63.   Plaintiff Mondigo purchased an Epson WorkForce WF-3640 All-in-One Printer in 2016 from Costco.

CLASS ACTION COMPLAINT
Case No.

64.    Plaintiff Mondigo considered several different printers but chose the Epson WorkForce WF-3640 All-in-One Printer because it had the features he was looking for.

65.    At the time of the purchase, Plaintiff Mondigo believed that he would be able to use less expensive third-party ink cartridges in the future.  The Epson material he reviewed did not cause him to believe otherwise.

66.    Plaintiff Mondigo's Epson WorkForce WF-3640 All-in-One Printer uses 252XL cartridges.  After his purchase, Plaintiff Mondigo replaced the printer's empty ink cartridges with new Epson cartridges and also with refilled Epson cartridges. Plaintiff Mondigo switched from these Epson products in 2018 when he purchased FreeSub replacement cartridges. Plaintiff Mondigo purchased the non-Epson cartridges because they were less expensive than the Epson ink cartridges. Epson cartridges would have cost significantly more.

67.    To this end, when his printer ran out of ink in 2018, Plaintiff Mondigo replaced the Epson cartridges with the FreeSub ink cartridges.  The FreeSub cartridges worked for multiple months.  He was able to print using his Epson WorkForce WF-3640 All-in-One Printer without interruption.

68.    At some point, Updates were installed on Plaintiff Mondigo's printer without his knowledge or consent.

69.    The Updates included instructions that detected that Plaintiff Mondingo had installed non-Epson ink cartridges in his printer and disabled his printer.

70.    After the Updates were installed, Plaintiff Mondigo received a message from Epson after turning on his Epson WorkForce WF-3640 All-in-One Printer. The error message instructed Plaintiff Mondigo to restart his printer. After he did so, the printer printed a test page but would not print any other job Plaintiff Mondigo sent it.

71.    Plaintiff Mondigo attempted to fix his Epson WorkForce WF-3640 All-in-One Printer by restarting it, reinstalling the ink cartridges, and replacing the ink

CLASS ACTION COMPLAINT
Case No.

1  cartridges. When these efforts failed, Plaintiff Mondigo purchased a replacement
2  printer.

3      **V.**       **CLASS ACTION ALLEGATIONS**

4      72.   Plaintiffs bring this action, on behalf of themselves and all others
5  similarly situated, as a class action under Rules 23(a) and (b)(3) of the Federal Rules
6  of Civil Procedure.

7      73.   Plaintiffs bring this action and seek to certify and maintain it as a class
8  action on behalf of themselves and a Nationwide Class, as defined below, or in the
9  alternative, on behalf of State Subclasses, as defined below.

10      **A.**    **The Nationwide Class**

11      74.   The Nationwide Class (the "Class") is initially defined as follows:

12      All United States residents who, within the applicable limitations period,
13  owned or purchased an Epson Printer.

14      Excluded from the Nationwide Class are Defendants, their employees, co-
15  conspirators, officers, directors, legal representatives, heirs, successors and wholly
16  or partly owned subsidiaries or affiliated companies; class counsel and their
17  employees; and the judicial officers or their immediate family members and
18  associated court staff assigned to this case.

19      **B.**    **The State Subclasses**

20      75.   In the alternative to the Nationwide Class, Plaintiffs alleges claims on
21  behalf of a state-wide class for certain states (the "Subclasses"). The Subclasses are
22  defined as follows:

23      **The Connecticut Subclass**

24      All Connecticut residents who, within the applicable limitations period,
25  owned or purchased an Epson Printer.

26      Excluded from the Connecticut Subclass are Defendants, their employees, co-
27  conspirators, officers, directors, legal representatives, heirs, successors and wholly
28  or partly owned subsidiaries or affiliated companies; class counsel and their

CLASS ACTION COMPLAINT

employees; and the judicial officers or their immediate family members and associated court staff assigned to this case.

**The California Subclass**

All California residents who, within the applicable limitations period, owned or purchased an Epson Printer.

Excluded from the California Subclass are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers or their immediate family members and associated court staff assigned to this case.

76.    Plaintiffs reserve the right to re-define the Class and Subclasses prior to class certification, and thereafter, as necessary.

77.    The members of the Class and Subclasses are so numerous that individual joinder is impracticable.  Upon information and belief the Class and Subclasses include thousands of owners of Epson printers.  Plaintiffs do not know the precise number of Class and Subclasses members, but they may be ascertained from Defendant's books and records.

78.    There are numerous questions of law and fact common to Plaintiffs and the Class and Subclasses.  Questions common to the Class and Subclasses predominate over any questions that may affect individual Class or Subclass members, including, but not limited to:

a.  Whether Epson violated the Computer Fraud and Abuse Act 18 U.S.C.§ 1030;

b.  Whether Epson violated the California Computer Data Access And Fraud Act, Cal. Penal Code § 502;

CLASS ACTION COMPLAINT
Case No.

c.  Whether Epson violated the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*., and the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*.;

d.  Whether Epson violated the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq*.;

e.  Whether Epson made material misrepresentations and omissions regarding Plaintiff's and the Class and Subclasses' Epson printers;

f.  Whether Epson's disablement of consumers Epson  printers constituted unfair or fraudulent practices under California law;

g.  Whether Epson's practices harmed Plaintiffs and Class and Subclass members;

h.  Whether Plaintiffs' and the Class and Subclass members' Epson printers are electronic or high speed data processing devices as defined in the Computer Fraud and Abuse Act;

i.  Whether Epson knowingly accessed Plaintiffs' and Class and Subclass members' Epson's  printers;

j.  Whether Plaintiffs' and Class and Subclass members authorized Epson to access their Epson  printers;

k.  Whether Epson exceeded its authority when it accessed Plaintiffs' and Class and Subclass members' Epson  printers;

CLASS ACTION COMPLAINT
Case No.

l.  Whether Epson knowingly transmitted a program information, code, or command that damaged Plaintiffs' and Class and Subclass members' Epson printers;

m.  Whether Epson knowingly added, altered, deleted, or destroyed any data, computer software or program related to Plaintiffs' and Class and Subclass members' printers;

n.  Whether Epson knowingly disrupted the Plaintiffs' and Class and Subclass members' printers;

o.  Whether Plaintiffs' and Class and Subclass members are entitled to equitable relief;

p.  The proper measure of damages; and

q.  Whether Plaintiffs' and Class and Subclass are entitled to restitution, and if so, in what amount.

79.   Plaintiffs' claims are typical of the claims of the Class and Subclasses he seeks to represent under FED. R. CIV. P. 23(a)(3) because Plaintiffs and members of the Class and Subclasses purchased and/or owned an Epson printer and have been subject to the same wrongful practices and have been harmed thereby in the same manner.

80.   Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclasses as required by FED. R. CIV. P. 23(a)(4). Plaintiffs are adequate representatives of the Class and Subclasses because they have no interests that are adverse to the interests of the Class and/or Subclasses. Plaintiffs and their counsel are committed to the vigorous prosecution of this action and have the

CLASS ACTION COMPLAINT
Case No.

financial resources to do so.  Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers and who do not have any interest adverse or antagonistic to those of the Class and Subclasses.

81.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and each Class and Subclass member are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for each Class and/or Subclass member to individually seek redress for Defendant's wrongful conduct.  Even if Class and Subclass members could afford individual litigation, individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

### 18 U.S.C. § 1030

### (ON BEHALF OF THE CLASS)

82.    Plaintiffs repeat and re-allege the allegations contained in the foregoing paragraphs as if fully set forth herein.

83.    The CFAA is a federal criminal statute that prohibits computer crimes, including unauthorized access to a computer, or access that exceeds any authorization and allows persons who have been damaged thereby to bring claims under the CFAA.

84.    The CFAA permits "any person who suffers damages or loss by reason of a violation of this section and may maintain a civil action against the violator to

obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030 (g).

85.    Plaintiffs and Class and Subclass members are "persons" under the CFAA, 18 U.S.C. § 1030(e)(12).

86.    Plaintiffs' and Class and Subclass members' Epson printers are "computers" under the CFAA.  Under the CFAA "the term 'computer' means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."  18 U.S.C. § 1030(e)(1).  Epson printers are data processing devices and perform storage functions.

87.    Plaintiffs' and Class and Subclass members' Epson printers are "protected computers" under the CFAA.  They are "used in or affecting interstate or foreign commerce or communication."  18 U.S.C. § 1030(e)(2)(B).

88.    Under the CFAA, "the term 'damage' means any impairment to the integrity or availability of data, a program, a system, or information."

89.    The CFAA establishes liability against anyone who "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer." 18 U.S.C. § 1030(a)(5)(A).

90.    "[T]he term "exceeds authorized access" means to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."

91.    Epson knowingly and with authorization exceeded its authorized access to Plaintiffs and Class and Subclass members' printers and caused damage.

92.    Epson took advantage of its ability to access Epson printers and caused the Epson printers to stop working.  Epson used its software and/or firmware Updates to "knowingly" transmit "a program, information, code, or command, and

as a result of such conduct" intentionally damaged Plaintiffs' Epson printers as well as the Class and Subclasses' Epson printers.  18 U.S.C. § 1030(a)(5)(A).

93.    Epson's knowing intrusions into the Plaintiffs' and the Class and Subclasses' Epson printers resulted in damage to Plaintiffs and Class members, by using its Updates to disable Plaintiffs' and Class member's printers and by forcing them to purchase more expensive third-party ink cartridges and preventing Plaintiffs and Class members from using cheaper third-party ink cartridges.

94.    Plaintiffs and Class members seek recovery of damages and all other relief allowed under 18 U.S.C. § 1030(g).

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT**

**CONN. GEN. STAT. § 42-110A *ET SEQ*.**

**(ON BEHALF OF THE CONNECTICUT SUBCLASS)**

95.    Plaintiff Famiglietti repeats and re-alleges the allegations contained in paragraphs 1-113 above, as if fully set forth herein.

96.    CUPTA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen Stat. § 42-110b.

97.    Plaintiff Famiglietti has suffered an ascertainable loss of money or property as a result of Epson's unfair methods of competition and unfair and deceptive acts.

98.    Epson's acts offends public policy that prohibits knowing and or unauthorized access to computers and printers, or access that exceeds any authorization given to disable those devices in order to retain market share and profits.

99.    Epson's practice of accessing Plaintiff's and other Connecticut Subclass' to knowingly disable functioning third-party ink cartridges to force the

Plaintiff Famiglietti and the Connecticut Subclass to purchase Epson's more expensive OEM ink cartridges and to eliminate competition from third-party ink cartridge vendors is immoral, unethical, oppressive and unscrupulous.

100.  Epson had reasonable alternatives to ensure its market share and maintain or increase profits.

101.  Epson engaged in deceptive business practices by misrepresenting the functionality of third-party ink cartridges and the purpose of its Updates.

102.  Epson mislead Plaintiff Famiglietti and the Connecticut Subclass by leading its members to believe that third-party ink cartridges would damage their printers and could not function when, in truth, those ink cartridges would not harm their printers and did function until Epson disabled them.  Epson intentionally caused the third-party ink cartridges to malfunction.

103.  Plaintiff Famiglietti and the Connecticut Subclass relied on Epson's false and misleading statements and were harmed thereby.

104.  The Connecticut Subclass is entitled to relief under CUPTA, including damages, punitive damages, equitable and injunctive relief and attorneys' fees and costs to the extent allowed.

**THIRD CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL")**

**(CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)**

**(ON BEHALF OF THE CALIFORNIA CLASS)**

105.  Plaintiffs repeat and re-alleges the allegations contained in paragraphs 1-123 above, as if fully set forth herein.

106.  Epson's headquarters are located in California and Epson regularly conducts business throughout the State of California.

107.  The conduct described herein emanated from Epson's California headquarters

108.   Epson must adhere to the requirements of the UCL.

109.   The UCL prohibits acts of unfair competition, including unlawful, unfair or fraudulent business acts or practices.

110.   Epson has engaged in unfair, unlawful or fraudulent business acts and practices in violation of the UCL, in that: (a) Epson's practices and conduct are immoral, unethical, oppressive and substantially harmful to Plaintiffs and the members of the California Subclass; (b) the justification for Epson's practices and conduct is outweighed by the gravity of the injury to Plaintiffs and the California Subclass; and (c) Epson's practices constitute unfair, fraudulent, untrue or misleading actions that exploit and mislead members of the public.

111.   Epson's practices were unfair because it is unethical, immoral, oppressive, and substantially injurious to consumers for Epson to knowingly and intentionally disable functioning third-party ink cartridges to force Plaintiffs and the California Subclass members to purchase Epson's more expensive OEM ink cartridges and to eliminate competition from third-party ink cartridge vendors and to use Updates that were characterized as providing improvements and fixes to damage and disable Plaintiffs' and the California Subclass's Epson printers to force them to use Epson OEM ink cartridges.

112.   The gravity of the harm resulting from Epson's conduct outweighs any possible utility of the conduct.  Epson had reasonable alternatives to ensure its market share and maintain or increase profits.

113.   Epson's practices were fraudulent because Plaintiffs and the California Subclass were deceived and likely to be deceived by Epson's misrepresentation regarding its Updates and the functionality of third-party ink cartridges.

114.   The harm caused by these practices outweighs any possible utility such business practices could have.

Case No.

115.   Epson engaged in fraudulent business practices by misrepresenting the functionality of third-party ink cartridges and the purpose of its software and firmware Updates.

116.   Epson's statements and representations would mislead a reasonable consumer into believing that it is not possible to use third-party ink in an Epson printer.   Epson further mislead consumers by leading them to believe that its software and/or firmware Updates would improve their Epson printers' functionality.   Instead they disabled the printers.   Plaintiffs and the California Subclass reasonably relied on Epson's statements and purchased ink cartridges that Epson disabled or purchased more expensive Epson brand cartridges believing that the third-party ink cartridges were defective.

117.   Epson's practices were unlawful because they violated the CFAA and the California Penal Code § 502.

118.   Epson's conduct caused the California Subclass to suffer an injury in fact.

119.   The California Subclass is entitled to relief under the UCL, including restitution, declaratory relief as well as attorneys' fees and costs to the extent allowed.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW**

**("FAL")**

**(CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*)**

**(ON BEHALF OF THE CALIFORNIA CLASS)**

120.   Plaintiffs repeats and re-alleges the allegations contained in paragraphs 1-138 above, as if fully set forth herein.

121.   Epson violated the FAL by using false and misleading advertising and statements and omitting material information.

122.   Epson misled Plaintiffs and the California Subclass by leading its members to believe that third-party ink cartridges would damage their printers and could not function when, in truth, those ink cartridges would not harm their printers. Epson intentionally caused the third-party ink cartridges to malfunction.

123.   As a direct and proximate result of Epson's false and misleading statements and advertising, the California Subclass suffered an injury in fact and lost money and property.

124.   The California Subclass relied on Epson's false and misleading statements and were harmed thereby.

125.   The California Subclass brings this action seeking to enjoin Epson from continuing to engage in its false and misleading statements and to require Epson to provide truthful and non-misleading information to consumers.   The California Subclass seeks restitution of the monies Epson obtained as a result of its false and misleading advertising, with interest and an award of reasonable attorneys' fees and costs, under the applicable law.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF CAL. PENAL CODE § 502**

**(ON BEHALF OF THE CALIFORNIA CLASS)**

126.   Plaintiffs repeats and re-alleges the allegations contained in paragraphs 1-144 above, as if fully set forth herein.

127.   Cal. Penal Code § 502 prohibits knowing access to computers, computer systems and networks.

128.   The California Penal Code authorizes Epson printer owners to bring a civil action "against the violator for compensatory damages and injunctive relief or other equitable relief. Compensatory damages shall include any expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access." Cal. Penal Code § 502(d)(1).

27

129.   Cal. Penal Code § 502(c)(1) makes it an offense to "[k]nowingly access[] and without permission alter[], damage[], delete[], destroy[], or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data."

130.   Cal. Penal Code § 502(c)(4) makes it an offense to, "[k]nowingly access[] and without permission add[], alter[], damage[], delete[], or destroy[] any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network."

131.   Epson accessed the California Subclass's printers, in that Epson was able "to gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with, the logical, arithmetical, or memory function resources of a computer, computer system, or computer network."  Cal. Penal Code § 502(b)(1).

132.   Epson violated the Cal. Penal Code when it executed a scheme or artifice and knowingly accessed the California Subclass's printers and damaged and interfered with them to "wrongfully control or obtain money, property or data" from members of the California Subclass.

133.   As a proximate result of Epson's violation of Cal. Penal Code § 502, the California Subclass were damaged and are entitled to compensatory damages, equitable relief and reasonable attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs individually and on behalf of all others similarly situated, respectfully request this Court enter a judgment against Defendant in favor of Plaintiffs and grant the following relief:

A.   Enter an Order certifying the proposed Class and Subclasses and appointing Plaintiffs as Class Representatives;

B.   Enter an Order issuing appropriate notice to the Class and Subclasses

at Defendant's expense;

      C.     Declare, adjudge and decree that Defendant violated the CFAA;

      D.     Declare, adjudge and decree that Defendant violated Cal. Penal Code § 502.

      E.     Declare, adjudge and decree that Defendant's conduct as alleged herein is unlawful, unfair and/or deceptive;

      F.     Declare, adjudge and decree that Defendant engaged in unfair methods of competition and unfair and deceptive acts;

      G.     Declare, adjudge and decree that Defendant's advertising and statements were false and misleading;

      H.     Award Plaintiffs and the members of the Class and Subclasses compensatory and statutorily enhanced damages or compensation as provided for under law for each of the causes of action set forth above;

      I.     Award restitution and disgorgement of Defendant's revenues or profits from its illegal behavior described herein to Plaintiffs and members of the Class and Subclasses;

      J.     Award declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and to disgorge to them all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful or pay them restitution and change their business practices.

      K.     Award Plaintiffs and the Class and Subclasses reasonable attorneys' fees, costs and pre-and post-judgment interest; and

      L.     Award such other and further relief as the Court deems just and proper.

Case No.

Date: October 18, 2019

Respectfully submitted,

**CARLSON LYNCH LLP**

By: */s/ Eric D. Zard*
(Eddie) Jae K. Kim
Eric D. Zard
1350 Columbia Street, Suite 603
San Diego, CA 92101
Telephone: (619) 762-1903
Facsimile: (619) 756-6991
Email: ekim@carlsonlynch.com

Edwin J. Kilpela (pro hac vice)
1133 Penn Ave, 5th Floor
Pittsburgh, PA 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246
Email: ekilpela@carlsonlynch.com

James P. McGraw, III
1133 Penn Ave, 5th Floor
Pittsburgh, PA 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246
Email: jmcgraw@carlsonlynch.com

**KEHOE LAW FIRM, P.C.**

Michael K. Yarnoff
Two Penn Center Plaza
1500 JFK Blvd. Ste. 1020
Philadelphia, PA 19102
Telephone: 215-792-6676
Email: myarnoff@kehoelawfirm.com

CLASS ACTION COMPLAINT
Case No.